GARRISON, Judge.
Michael Aaron Seals and Merts J. Hend-richson were the drivers of two cars involved in a rear-end collision on May 22, 1976. Seals filed suit against Hendrichson’s insurer, Allstate Insurance Company, under the Louisiana Direct Action Statute. After a jury trial, Seals was awarded damages in the amount of $2,000. Dissatisfied with the amount of the award, Seals filed a motion for additur or for new trial. When his motion was denied, Seals filed this appeal and defendant filed an answer to the appeal.
Plaintiff’s specifications of error on appeal, when reduced to their simplest form, are basically that the jury erred in their findings of fact and that they abused their discretion by awarding grossly inadequate damages. The defendant, on the other hand, contests the jury’s finding of liability and avers that the award was too high. The jury’s verdict was in the form of answers to three interrogatories, as follows:
“1. Was defendant, M. Jay Hendrickson [sic], guilty of negligence which imposes responsibility for the accident? YES
“2. Was plaintiff, Michael Aaron Seals, guilty of contributory negligence which imposes responsibility for his own damages? NO.
“3. What damages, general and special, did plaintiff sustain as a proximate result of the accident? $2.000.00”
The evidence shows that Hendrich-son collided with Seals when Hendrichson swerved left to avoid'a car which had pulled out in front of him from the Interstate-10 off-ramp. Seals’ car was in the left lane of the two-lane boulevard and had slowed to make a turn. Hendrichson testified that the “phantom car” was about two-and-a-half to three car lengths ahead of him. He testified that he saw plaintiff’s vehicle before he changed lanes, but thought that he had room to stop. After he was in the left lane, he realized plaintiff’s car was slowing to make a turn. Hendrichson said that he felt under normal conditions he would still have had enough room to stop before hitting plaintiff, but the streets were slightly wet due to the misty weather and so the traction was not good.
Defendant Allstate cites the sudden emergency doctrine as a basis to absolve its insured of liability. However, we do not think that doctrine applies here. Hendrich-son saw the phantom car about three or four car lengths before he noticed it pulling out in front of him, at which time he changed lanes because he felt he could not stop before hitting the phantom car. He testified there was no obstruction blocking his view of Seals’ car, but that he did not notice Seals’ brake lights because he was concentrating on the phantom car in the right lane. Under the circumstances, although we sympathize with his plight, we do not feel he exercised the degree of care required of a prudent motorist. Potts v. Hollier, 344 So.2d 70 (La.App. 4th Cir. 1977); Edwards v. Sims, 294 So.2d 611 La. App. 4th Cir. 1974). Accordingly, we affirm as to liability.
Although the verdict did not specify what injuries the jury found Seals to have suffered, plaintiff contends that (considering the amount of the damage award) they must have failed to find he suffered a vertebral compression fracture as a result of the accident. He contends that such failure to find was error because it was against the weight of the evidence. We do not agree.
Seals testified that the impact of the collision shoved him forward and back with sufficient force to displace the driver’s seat of his car. He blacked out momentarily, his *693 neck and back were hurting, he was nauseated, and he started crying. After the police investigated the accident, one of the passengers in his car drove him back to Mobile, Alabama, where he lives (a three-to-four-hour drive from New Orleans). Seals’ brother than took him to the emergency room at the University of South Alabama Medical Center, where he was examined by an intern and his neck and back were X-rayed. He was told to take aspirin and get rest, and was sent home with instructions to return in a few days. Instead, on May 25th and 29th he went to his family physician, Dr. Milton Leigh. Dr. Leigh took more X-rays and prescribed antibiotics and rest. Plaintiff stayed home from work for a week-and-a-half. He returned to Dr. Leigh in August, 1976, because his back pain had returned. Subsequently, he was sent to Dr. Kenneth Vogel by his attorney. Seals testified at trial that he had been without pain for only two days since the accident, and that the pain was so severe in the mornings that he could hardly straighten up.
We note that neither the intern at the Medical Center nor Dr. Leigh found any compression fracture. No testimony, depositions or medical reports from these Alabama physicians were offered at trial. The only medical testimony at trial came from Dr. Kenneth Vogel, plaintiff’s witness, and Dr. Eugene Dabezies, defendant’s witness. Both doctors based their diagnoses of Seals on the X-rays taken in Alabama, although Dr. Vogel also conducted a physical examination of plaintiff. Based on the X-rays, Dr. Vogel concluded that Seals had suffered a compression fracture of the T-8 vertebra, while Dr. Dabezies concluded that the X-ray irregularity indicated pre-existing Scheurmann’s Disease. Seals contends that the jury must have placed greater weight on Dabezies’ testimony than on Vogel’s and that this was error.
Although it is true that the testimony of a treating physician should be accorded greater weight than that of a non-treating physician, that rule is not applicable here. Neither Dr. Vogel nor Dr. Dabezies was plaintiff’s treating physician. Neither doctor is a radiologist: Dr. Vogel’s speciality is neurology, while Dr. Dabezies’ speciality is orthopedics. Dr. Vogel admitted that Scheurmann’s Disease is an orthopedic problem which he does not treat, while Dr. Dabezies has extensive clinical experience treating the disease. Dr. Vogel also admitted that the X-rays showed the only evidence of compression fracture, and that his diagnosis was based solely on the X-rays although he did conduct a physical examination. He admitted that the X-rays could also be indicative of Scheurmann’s Disease or other problems. Plaintiff contends that because Dr. Dabezies is not a radiologist and did not conduct a physical examination of plaintiff, his testimony should not be given greater weight than Dr. Vogel’s. However, Dr. Vogel is not a radiologist either, and his diagnosis, like Dabezies’, was based solely on the X-rays. Considering the evidence in the record and what we must surmise to be the jury’s findings, we find no manifest error and we will not overturn the verdict. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Further, we find no abuse of discretion in the amount of the jury’s award, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and must affirm. Nor did the trial judge err in his refusal to grant additur or a new trial.
For the foregoing reasons, the decision of the district court is affirmed.

Affirmed.